[Crim. No. 1242. First Appellate District, Division Two.—June 1, 1925.]

THE PEOPLE, Respondent, v. LEW HOE, Appellant.

[1] CRIMINAL LAW—MURDER—EVIDENCE—MISCONDUCT OF TRIAL COURT —ABSENCE OF PREJUDICE.—In this prosecution for murder, in which the testimony sustained the verdict of guilty, conceding that a certain question and answer as to whether defendant had been asked if the deceased had said that he (defendant) had shot him, contained in a written statement signed by defendant before the trial, were not admissible, nevertheless no prejudice could have resulted to defendant from the mere act of the court in stating the question before the jury, where the jury at that time did not know but what the answer to the question was in the negative, and the question was stricken out upon the objection of defendant's counsel, and it was only when the latter insisted upon the answer being read into the record that the fact came before the jury that deceased had made an accusation against defendant.

---

(1) 17 C. J., p. 211, n. 4; 30 C. J., p. 310, n. 25.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sylvester J. McAtee for Appellant.

U. S. Webb, Attorney-General; and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment upon a verdict of a jury finding him guilty of murder. Appellant's statement of facts fairly summarizes the outstanding features of the record, which are:

Lum Wing Lock, the deceased, lived in a room on the second floor of a building on Grant Avenue in San Francisco, California. Another room close by was occupied by his son, Lum Sing Gum, and a companion, Mock Jim. In another room, No. 35, upon the same floor, lived the defendant and appellant. At about 6 o'clock on the morning of March 8, 1924, the deceased was shot while he was in a kitchen upon the same floor, but at a little distance down the hall from the room of the deceased. This was a community kitchen and not directly connected either with the sleeping-room of the deceased or of the appellant.

The deceased was shot twice in the back, the bullets penetrating the abdomen and passing through the body. The weapon with which the shooting was done was held so close to the body of the deceased as to leave powder burns upon his clothing. He died within a few hours.

Mock Jim, the young Chinese who occupied the same room with Lum Sing Gum, the son of the deceased, testified that on that morning he had left his room to go to a toilet situated on the opposite side of the hallway from where the kitchen was located. He saw the deceased walking ahead of him in the hallway and saw him enter the kitchen. Mock Jim entered the toilet and while there he heard someone walking in the hall and then he heard a pistol shot. He put his head outside the door of the toilet and saw the defendant a few steps away from him firing his revolver into the kitchen. He heard three shots fired and retreated again into the toilet as the defendant turned and started back to his room. While the shots were being fired, Mock Jim heard the deceased call out: "Save my life, Lew Hoe is shooting me." After the defendant re-entered his room,

Mock Jim went to the kitchen and assisted the son of deceased in carrying the wounded man into the hall.

The testimony of Mock Jim is corroborated by the testimony of Lum Sing Gum, son of deceased, who stated that while he was still in bed, Mock Jim left the room which they were occupying together; that shortly afterward the witness heard a shot; that he jumped out of bed and heard two other shots fired in rapid succession and heard his father ,cry out: "Save my life, Lew Hoe is shooting me." Lum Sing Gum ran into the hallway in time to see the defendant walk rapidly down the hall and enter his own room. He did not see any weapon in the hands of defendant, but stated that defendant had his hand in his coat pocket.

The police officers were called and they knocked at the door of the room occupied by defendant and demanded admittance in English and in Chinese, but the defendant refused to open the door and the officers broke it open and found the defendant. They asked him about a revolver and he replied that he had "no gun." Upon searching the room, the police found a revolver under the mattress of defendant's bed. There were no cartridges in it, but one of the officers testified that when it was found, the barrel was still warm as though the weapon had recently been discharged. Defendant also denied that he had any cartridges for this revolver. After defendant had been taken to the police station, a further search of his room revealed three cartridges of a size to fit his revolver, hid away in the bottom of a chopstick holder upon the wall of the room.

The foregoing testimony sustains the verdict, regardless of the conflict raised by the denials of defendant and regardless of the unexplained circumstance that no empty cartridge shells were found in defendant's room after a most careful search.

[1] The only ground urged by the appellant for a reversal of the judgment is that the court was guilty of misconduct with relation to certain evidence offered by the prosecution. This was a written statement signed by defendant before the trial. When it was offered in evidence, it was objected to. However, counsel for defendant stated that all portions of this statement were admissible except one question and answer which he indicated to the court with his finger. The court said he would ask questions of

the police officer based upon this written statement of defendant, and objections could be made to each question. A number of questions were asked and the answers were given by the officer by refreshing his recollection with the signed statement of defendant. No objection was made until the court asked the officer if defendant had been asked: "Did Lum Wing Lock say that you shot him?" Objection was made upon the ground that this embodied an accusation which had been immediately denied by defendant and was, therefore, inadmissible against him, and the action of the court in stating it before the jury was assigned as misconduct. The court replied that this was not the statement which counsel had indicated he would object to, and that the court understood that the question to which counsel had pointed was: "Did you shoot Lum Wing Lock? A. No." The court had omitted this question and answer from his examination of the witness. When counsel insisted that he had objected to the question which the court had asked and not to the one which was omitted by the court, the objectionable question was ordered stricken out. However, counsel for defendant insisted that the answer to this question should also be read to the jury since they had heard the question and the court had the answer repeated by the witness, which was: "Yes, but he tell a lie."

Conceding that the question and answer were not admissible, nevertheless, no prejudice could have resulted to the defendant from a mere reading of the question alone, because the jury did not know but what the answer to it was in the negative. It was only when the counsel for defendant insisted upon the answer being read into the record that the fact came before the jury that deceased had made an accusation against defendant. It is apparent that there is no prejudicial error presented by this incident which would warrant a reversal of this judgment.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.